# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARCUS DEANGELO LEE,
A/K/A MARCUS DEANGELO JONES,

       Petitioner,

       v.                         CASE NO.  19-3029-JWL

NICOLE ENGLISH,
Warden, USP-Leavenworth,

       Respondent.

## MEMORANDUM AND ORDER

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241.  At the time of filing, Petitioner was in federal custody at USP-Leavenworth ("USPL").  Petitioner proceeds *pro se* and *in forma pauperis*.  Petitioner alleges that the Bureau of Prisons ("BOP") denied him a "pre-parole/pre-release like setting" or a quantum change in custody in violation of federal law and due process, in retaliation, and based on false and inaccurate information in his Inmate Central File.  (Doc. 10, at 5.)  The Court denies the Petition and dismisses Petitioner's retaliation claim and any claim he asserts regarding his security classification.

## I.  Factual Background

Petitioner was sentenced in the Western District of Missouri on July 25, 2000, and November 2, 2000, and is serving an aggregated sentence of 327 months of incarceration, followed by five years of supervised release for Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(l), Conspiracy to Distribute and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 846, Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(l) & 924(e), and False Statements in Acquisition of a Firearm, in violation of 18 U.S.C. §§ 922(a)(6) & 924(a)(l)(B).  (Doc. 11–1, at

1

2, 13–14.) Petitioner's projected release date is January 17, 2024, via Good Conduct Time release. *Id.* at 2, 12.

The BOP utilizes an inmate's Presentence Investigation Report ("PSR") to review information related to the offender and to assist with various programming needs. *Id.* at 2. The inmate's PSR is maintained in the Inmate Central File. *Id.* While the PSR is maintained in the BOP's files, the BOP does not have the ability or discretion to change or alter the information contained within the PSR. *Id.* at 2–3. The BOP does not always rely solely on the information contained within the PSR and will frequently evaluate other information related to issues presented in the PSR, including reviewing information presented by the inmate himself. *Id.* at 3. As part of reviewing programming needs of an inmate, unit team members will evaluate Offense Conduct and Criminal History identified in the PSR or other documentation. *Id.*

Initial designations for federal inmates are usually conducted by staff at the Designation and Sentence Computation Center ("DSCC"), who enter information about the inmate from the Sentencing Court, U.S. Marshals Service, U.S. Attorneys Office or other prosecuting authority and the U.S. Probation Office, into a computer database called SENTRY, to calculate a point score for the inmate which is then matched with a commensurate security-level institution—Minimum, Low, Medium, High, and Administrative, for male inmates. *Id.* at 4; *see also* BOP Program Statement 5100.08, *Inmate Security Designation and Custody Classification* (2006) ("P.S. 5100.08"), Ch.1, at 2.[1]

As part of the base-point scoring system upon which an inmate's custody classification recommendation is based, staff evaluate, among other factors, the severity of the current offense. (Doc. 11–1, at 6.); P.S. 5100.08, Ch. 4, at 7–8, Ch. 6, at 2–5. In order to determine the severity

---

[1] BOP Program Statements may be accessed at the BOP public website located at www.bop.gov.

of the current offense, staff at the DSCC for the initial classification or Unit Team for classification updates, review documents associated with the inmate's conviction, including the Statement of Reasons ("SOR") and the PSR, and Staff enter the appropriate number of points that reflect the "most severe documented instant offense behavior" regardless of the conviction offense. *Id*. at 7; P.S. 5100.08, Ch. 2, at 2, Ch. 4, at 7–8, Ch. 6 at 2–5. Severity is determined by using the Offense Severity Scale and reviewing the SOR to ensure the information provided is appropriately used in classifying the inmate. Pursuant to the Offense Severity Scale, a score of Greatest Severity (7 points) should be assigned when the inmate's offense behavior includes, among other offenses, "brandishing or threatening use of a weapon." *Id*. at 8; P.S. 5100.08, Appendix A, at 1.

Criminal History Points, normally calculated by the U.S. Probation Office, reflect an assignment of a numerical value based on the inmate's entire criminal record of convictions. P.S. 5100.08, Ch. 2, at 1. They are used to calculate a Criminal History Score, which is one of the factors used to calculate the inmate's security point total. *Id*. at Ch. 2, at 1, Ch. 4, at 8.

The inmate's "History of Violence" is also used to assess points "that reflect any history of violence, considering only those acts for which there are documented findings of guilt . . . [and] includes the individual's entire background of criminal violence, excluding the current term of confinement." *Id*. at Ch. 4, at 9 (noting that institution disciplinary hearings finding a prohibited act was committed during the current term of confinement will be scored as a history item). The History of Violence points reflect a combination of both the seriousness and recency of prior violent incidents. *Id*. (i.e., Serious > 15 years). "Documented information from a juvenile, Youth Corrections Act (YCA) or District of Columbia Youth Rehabilitation Act (DCYRA) adjudication can be used unless the record has been expunged or vacated." *Id*. Points

are also assessed for "History of Escape or Attempts," again using a combination of both the seriousness and recency of the incident. *Id*. at Ch. 4, at 10.

An inmate's security point score is not the only factor used, and the application of a Public Safety Factor ("PSF") or a Management Variable ("MGTV") could affect placement.[2] (Doc. 11–1, at 4–5); P.S. 5100.08, Ch. 1, at 2. There are nine PSFs, which BOP staff apply to inmates who are not appropriate for placement at an institution which would permit inmate access to the community, i.e., Minimum security. *Id*. at Ch. 2, at 4. One of the PSFs is applied for receiving a Greatest Severity Offense classification (noted as Category C) for the inmate's current offense, which dictates the inmate be housed in at least a LOW security-level institution unless the PSF is waived. *Id*. at 5; P.S. 5100.08, at Ch. 2, at 4, Ch. 5, at 7. The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his demonstrated current or prior behavior. *Id*.; P.S. 5100.08, Ch. 2, at 4. An MGTV, however, may be applied based on the professional judgment of BOP staff to ensure the inmate's placement in the most appropriate level institution. *Id*.; P.S. 5100.08, Ch. 2, at 3; Ch. 5, at 1 (MGTV's require review and approval by the DSCC Administrator).

Transfers, also known as redesignations, are "considered in much the same manner using many of the same factors used at the time of initial designation. In addition, the inmate's institutional adjustment and program performance are also carefully reviewed when redesignation is considered." P.S. 5100.08, Ch. 1, at 3.

_____

[2] "A Public Safety Factor (PSF) is relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public." P.S. 5100.08, Ch. 5 at 7. "A Management Variable is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level." *Id*. at Ch. 5 at 1.

Petitioner has two PSRs.  The first PSR, with a Final Report date of July 6, 2000, related to his sentence for multiple counts of Distribution & Possession with Intent to Distribute Cocaine Base, pursuant to 21 U.S.C. § 841(a)(1) ("PSR 1").  The second PSR, with a Final Report date of October 6, 2000, related to his sentence for Felon in Possession of a Firearm pursuant to 18 U.S.C. §§ 922(g)(1) and 924(e), and his sentence for False Statements in Acquisition of a Firearm pursuant to §§ 18 U.S.C. 922(a)(6) and 924(a)(1)(B) ("PSR 2").  (Doc. 11–1, at 3.)

The BOP maintains that Petitioner's PSR 2 contains information pertaining to his criminal charges and convictions, and indicates that Petitioner returned shots from a vehicle he was driving, inadvertently shot his own vehicle, and displayed a receipt for a gun he had obtained from the Callaway Pawn and Gun Shop.  *Id.* at 9. The BOP also maintains that PSR 2 includes an Addendum to the Presentence Report with the Defendant's objections also dated October 6, 2000, and a Sentencing Addendum to the Presentence Report dated November 2, 2000, in which defendant's objections were overruled. *Id.* The BOP further alleges that the SOR indicates that the Court adopted the factual findings and Guideline application in PSR 2, and no other documentation was provided to the BOP indicating that Petitioner's sentencing court made any other determinations on any objections proffered by Petitioner.  *Id.* at 9–10.  Based on these documents, the BOP scored Petitioner's current offense as Greatest Severity, finding that the offense conduct clearly describes behavior that meets the Weapons category ("brandishing or threatening use of a weapon") under the Greatest Severity category of the Offense Severity Scale as outlined in Appendix A of P.S. 5100.08.  *Id.* at 10; P.S. 5100.08, at Appendix A, at 1.

PSR 2 also contains the Defendant's criminal history including a Juvenile Adjudication for Aggravated Robbery. *Id.*  As described in PSR 2, Petitioner was involved with two (2) robberies at gunpoint, and identical information is contained in PSR 1. *Id.*  Despite non-specific

objections to criminal history in PSR 1 and PSR 2, the district court judge made no changes to Petitioner's juvenile adjudication for Aggravated Robbery as included in both PSRs. *Id.* Per P.S. 5100.08, documented information from juvenile or YCA adjudications can be used to assess the Severity of an inmate's History of Violence unless the record has been expunged or vacated. *Id.*; P.S. 5100.08, Ch. 4, at 9. Ch. 6, at 7. The BOP found that Petitioner's juvenile adjudication for Aggravated Robbery meets the definition of conduct described as a Serious History of Violence. *Id.*

At the time of filing, Petitioner's current Custody Classification Form reflected a score of Greatest Severity based on his instant offense behavior as reflected in PSR 2 and following a review of his SOR, and did not reflect an MGTV. *Id.* at 9, 54. It also reflected a score of >15 Years Serious for Petitioner's History and Severity of Violence, based on his Criminal History found in his PSR 1 and PSR 2. *Id.* at 9. The BOP determined Petitioner was properly housed at USPL, finding that his total point allotment, including the seven points allotted for being scored at Greatest Severity for his current offense, equals eighteen (18) points, which scores him as a MEDIUM security level inmate with IN custody. *Id.* Due to his classification as Greatest Severity for his current offense, a PSF was automatically applied, pursuant to Bureau policy. *Id.* at 10, 54; P.S. 5100.08, Ch. 5, at 7. Petitioner did not have an MGTV at that time. *Id.* at 54.

However, after he filed his Petition, and as of May 30, 2019, Petitioner's classification remained at 18 points, which are Medium Level points, but he now has a MGTV for Lesser Security placing him at a Low Security Level. (Doc. 19–1, at 5.); *see* Doc. 24–1, at 5 (May 17, 2019 Request for Transfer applying Lesser Security MGTV and correcting discrepancies in BP-337/BP-338). Petitioner was transferred to Forrest City-FCI-Low around the beginning of July

2019.[3]  Respondent alleges that Petitioner's transfer was completed in accordance with the provisions of P.S. 5100.08.  (Doc. 16–1, at 2.)

## II.  Motion for Stay Pending Transfer to Another Jurisdiction and on Notice Request to Transfer 28 U.S.C. § 2241 Petition (Doc. 14)

Petitioner asks the Court to stay this case due to his transfer to another prison,[4] and to transfer his § 2241 Petition to another court within the jurisdiction of his new facility.  On July 8, 2019, Petitioner filed a Notice of Address Change (Doc. 21) informing the Court that he is now incarcerated at FCI Forrest City-Low in Forrest City, Arkansas.

The Court has examined the record but finds no basis to grant Petitioner's request to transfer this case.  The Court noted in its previous Order (Doc. 15) that a transfer and accompanying custodial change does not defeat initial jurisdiction.  *See Pinson v. Berkebile*, 604 F. App'x 649, 652–52 (10th Cir. 2015); *Griffin v. Ebbert*, 751 F.3d 288, 290–91 (10th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change") (citations omitted); *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) (citations omitted) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.").

Petitioner's transfer does not divest this court of jurisdiction over his petition, and the transfer he seeks is unnecessary.  This matter is fully briefed, and the Court finds that a hearing is unnecessary for the Court to rule on the merits.  Petitioner acknowledges that a transfer is unnecessary as long as the Court is able to order his new custodian to comply with the Court's

---

[3]  Respondent alleges that the transfer recommendation was done by Petitioner's Unit Team at Petitioner's request, but Petitioner disputes that he requested a transfer.  (Doc. 16–1, at 2.)

[4]  Petitioner filed a subsequent motion to stay his proceedings (Doc. 17) and the Court entered an Order on June 19, 2019 (Doc. 18) denying the request for a stay, noting that Petitioner may move for an extension of time if he is unable to file his reply by the Court's July 1, 2019 deadline.  Although Petitioner was able to file his reply by the deadline, the Court granted him an extension of time to file an amended reply.  (Doc. 23.)

orders.  (Doc. 19, at 7.)  The U.S. Attorney, on behalf of the BOP, and the current Respondent would be responsible for implementing the directives of the Court.  *See Atkins v. Garcia*, 816 F. Supp. 2d 1108, 1117 (D. Colo. 2011) (finding that jurisdiction attached at the initial filing and was not destroyed by a transfer and stating that "[s]ince Respondent has not sought substitution of party, the U.S. Attorney, on behalf of the BOP, and the currently named Respondent in this action, who agreed to the transfer of Applicant . . . are responsible for implementing the directives in this Order.").  However, because the Court is denying relief on the Petition, such a concern is moot.  Accordingly, the motion for stay and transfer is denied.

## III.  Motion for Evidentiary Hearing and Request for Production of Documents (Doc. 13)

Petitioner seeks an evidentiary hearing to receive testimony from BOP staff regarding the process of considering the statutory factors under 18 U.S.C. §§ 3624(c) and 3621(b), including how information is processed when corrected information is submitted to be placed in files, and testimony regarding how placement considerations are made.  Petitioner also seeks to receive documents from State and Federal Courts which are contained in his Central File.[5]

The Court finds that an evidentiary hearing is not necessary in light of the Court's rulings.  The information Petitioner seeks through testimony is addressed in the BOP's Program Statements that are discussed in this Memorandum and Order.  "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."  *Pittman v. Fox*, 766 F. App'x 705, 723 (10th Cir. 2019) (quoting *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004)).  The Court finds there is nothing in the record indicating Petitioner is entitled to relief.  *See Stouffer v.*

---

[5] The Court notes that it appears as though the documents Petitioner is referring to are attached to his Petition (*see* Doc. 1–1, at 36-74) and his real concern is whether or not they are still contained in his Central File.  P.S. 5800.17(11)(b) sets forth the procedure for an inmate to request and review Central File materials, and subsection (11)(e) sets forth documents that are excluded from review.

*Workman*, 348 F. App'x 401, 405 (10th Cir. 2009) (unpublished) (citing *United States v. Lopez,* 100 F.3d 113, 119 (10th Cir.1996) ("In response to a [28 U.S.C.] § 2255 motion, the district court must hold an evidentiary hearing on the prisoner's claims unless the motion and files and records in the case conclusively show that the prisoner is entitled to no relief.") (quotations omitted); *Wilson v. Okla.,* 335 F. App'x. 783, 784 (10th Cir. 2009) (unpublished) (applying this principle to a § 2241 petition)).

The Court likewise finds that discovery is unnecessary. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Curtis v. Chester*, 626 F.3d 540, 549 (10th Cir. 2010) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). The Court, in its discretion, may apply Rule 6 of the Rules Governing Habeas Corpus Cases, foll. 28 U.S.C. § 2254, to habeas petitions filed under § 2241. *See* Rule 1(b), Rules Governing Habeas Corpus Cases. The Court may permit discovery under Habeas Rule 6 if the Petitioner provides "reasons" for the request and the Court finds "good cause" to allow discovery. *Id.* at Rules 6(a) and 6(b); *Smith v. Gibson*, 197 F.3d 454, 459 (10th Cir. 1999) (petitioner entitled to discovery "if, and to the extent that, the [district court] judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."). Petitioner has not shown good cause for discovery. He has not "set forth good reason to believe he may be able to demonstrate he is entitled to relief." *Curtis*, 626 F.3d at 549 (citing *Bracy*, 520 U.S. at 908–09).

## IV.  Discussion

Petitioner acknowledges that the Court cannot order the BOP to place him in a Residential Reentry Center ("RRC") or a Community Correction Center ("CCC"), but asks the Court to order the BOP to make corrections to his Central File and to follow the statutory

mandate in determining his eligibility. (Doc. 10, at 10.) Petitioner claims that the issues in this case are:

> I. Whether Petitioner is entitled to Immediate consideration for "Pre-Parole like" setting or "Quantum change" in custody transfer to a [RRC or CCC] without consideration of BOP Policy or regulations that categorically denies petitioner consideration for placement until 17 – 19 months from his release date, without explicit consideration of the factors set by Congress in 18 U.S.C. § 3624(c) and 18 U.S.C. § 3621(b), in violation of the Constitution and laws of the United States?
> II. Whether Fabricated facts and Inaccurate Information in the BOP's file in violation of 5 U.S.C. § 552a, relied on in a retaliatory manner undermines the process for RRC/CCC review, where there is a probabilistic impact on the duration of petitioner's custody?
> III. Whether the BOP's interpretation of 18 U.S.C. § 3621(b)(2), (3), and (5), in the implementation of Program Statement § 5100.8, that is in direct contravention of well established law?

(Doc. 12–1, at 2–3.)

## 1. Standard of Review

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3).

## 2. Retaliation

Petitioner claims that he filed multiple challenges through the Administrative Remedy Program which resulted in remands due to inaccuracies in his file. Petitioner alleges that on February 6, 2018, during his Unit Team in Springfield, Missouri, he notified Unit Management of his 10% Community Corrections/Pre-Release eligibility date, after the correction of the inaccurate information, and his Case Manager, Beth Cupp, stated that because of Petitioner's repeated administrative grievances against staff, Petitioner would not be considered for Pre-Release/Community Corrections "although Petitioner is within 19 months of his 10% date." (Doc. 10, at 8.) Petitioner alleges that his Offense Severity was then inappropriately increased to

"Greatest Severity" despite it being scored as "Moderate" from his original classification in 2000 through 2017. *Id*. Petitioner attempted to correct his file at USPL, but was told that he would not be considered for RRC consideration because of what was written in his file, and that he didn't make any friends at Federal Medical Center Springfield. (Doc. 2, at 2.)

A petition under 28 U.S.C. § 2241 provides the remedy to challenge the execution of a sentence. *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011). Thus, a petitioner may challenge the fact or duration of his confinement and may seek release or a shorter period of confinement. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1037 n.2 (10th Cir. 2012). However, claims challenging a prisoner's conditions of confinement do not arise under § 2241. *See McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811–12 (10th Cir. 1997) (contrasting suits under Section 2241 and conditions of confinement claims). Therefore, Petitioner may not bring his retaliation and other conditions of confinement claims in a habeas corpus action. The Court finds that Petitioner's retaliation claim is not properly before the Court.

### 3. Inaccuracies in Central File

Petitioner challenges the information used in his Central File to calculate his custody and security scores, which ultimately resulted in an alleged disapproval for pre-release placement in an RRC. Petitioner alleges that he challenged two specific allegations in his file—the Offense Severity and History of Violence. (Doc. 12–1, at 5.) Petitioner alleges that he obtained records from the Juvenile Court of Memphis and Shelby County Tennessee, and from the United States District Court for the Western District of Missouri, but those records were ignored by the BOP. *Id*. Petitioner alleges that staff "decided to increase the Offense Severity of Greatest Severity, for offense conduct alleging that Petitioner Brandished or threatened use of a firearm, by selecting five words from a sentence in the PSR, and ignoring what transpired." (Doc. 10, at 8.)

Petitioner filed the instant Petition, asking the Court "to order the BOP to disregard the fabricated and false information that is considered in applying the statutory factors to deny placement or consideration for the pre-parole/pre-release setting, when the case presents circumstance that warrants Pre-Release consideration but for the inaccurate information being used." (Doc. 1, at 8.)

If an inmate seeks to challenge information in his PSR, the inmate may write his USPO directly or he may prepare a written challenge by providing his Unit Team with sufficient information in support of the challenge, which staff will then forward to the appropriate USPO. (Doc. 11–1, at 8.) When the USPO verifies that the information in the PSR is inaccurate as claimed by the inmate, staff subsequently review this information, and where indicated, staff correct Bureau-generated reports or data such as the ILSD data, Custody Classification form, Progress Report, and any other report that may have been based on the PSR. *Id.* at 9. Program Statement 5800.17(11)(c) provides, in pertinent part:

> An inmate may challenge the accuracy of Central File materials. Unit staff take reasonable steps to ensure the accuracy of challenged information, particularly when that information is capable of being verified. The inmate is required to provide staff with sufficient information in support of a challenge (names of persons to contact, government agency, etc.).
>
> When an inmate provides such information, staff review the alleged error(s) and take reasonable steps to ensure the information is correct.
>
> For example, if an inmate challenges information in the PSR, staff instruct the inmate to prepare a written challenge, which staff then forward to the appropriate U.S. Probation Office (USPO). USPO procedures, however, do not allow changes or addendums to be made to the Presentence Investigation Report after sentencing, since it is a court document.
>
> If the USPO subsequently reports that the challenged information, or some part thereof, is not accurate, staff attach the inmate's

> inquiry and the USPO response to the challenged document. Staff
> file this information in the applicable section of the Inmate Central
> File, and also make a notation on the Inmate Activity Record (BP–
> A0381) to ensure that future decisions affecting the inmate are not
> based on discredited information.

Program Statement 5800.17, *Inmate Central File, Privacy Folder, and Parole Mini-Files* (2015)

("P.S. 5800.17"), at ¶ 11(c). It appears as though Respondent complied with P.S. 5800.17(11) by

assisting Petitioner with a request to the USPO to change his PSR. *See* Doc. 1–1, at 29

(March 31, 2018 letter from Warden English to USPO). Petitioner acknowledges that a request

to the USPO was made and states that the USPO "is under no obligation to respond and has

fail[ed] to do so in this case." (Doc. 12–1, at 5.)

The Court finds that Petitioner's challenge to the accuracy of his PSR in his Central File

must be denied. The petitioner in *Gbor v. Entzel* made a similar argument, and the court

explained that the BOP

> is authorized to use a pre-sentence report prepared by the USPO to
> determine a prisoner's custody level. Although a prisoner may
> challenge the accuracy of information in a pre-sentence report, the
> prisoner may not direct that challenge to the BOP. *See* BOP
> Program Statement 5800.17. Rather, because a pre-sentence report
> is a court document prepared by the USPO, a prisoner seeking to
> challenge any aspect of a pre-sentence report must direct that
> challenge to either the district court in which he was convicted or
> the USPO. *Id*. If the USPO later reports an inaccuracy, the BOP
> staff files that information with the inmate's file and removes the
> document containing inaccurate information. *Id*. Unlike the
> USPO, the BOP has no authority to make any changes to a pre-
> sentence report.

*Gbor v. Entzel*, No. ED CV 17-1666-R (PLA), 2017 WL 6755113, at *1 (C.D. Cal. Nov. 30,

2017) (citation omitted), *rec. adopted* 2017 WL 6734173 (C.D. Cal. Dec. 21, 2017). The court

found that the petitioner's claim could not be resolved via a habeas petition because he

complained of the effect on his custody classification, which is a condition of his confinement.

*Id.* at *2. Second, the court found that even if his claim could be brought in a habeas action, it would fail on the merits. *Id.* at *3. The court found that "[o]ther than petitioner's conclusory allegations, there is no basis to conclude that petitioner did not suffer a conviction for domestic violence." *Id.* (noting that petitioner does not dispute that he suffered a conviction for domestic assault and although he contents that he did not knowingly plead to "any form of violence," he does not deny the conviction itself). Similarly, Petitioner in the instant case does not show that his prior convictions have been set aside, and instead argues regarding the underlying facts in his prior convictions. *See* Doc. 1–1, at 37 (June 10, 1992 Order finding Petitioner "did on or about May 11, 1992, in Shelby County, Tennessee, commit . . . aggravated robbery").

Lastly, the court in *Gbor* found that petitioner's claim must fail because he has directed his challenge to the wrong party. *Gbor*, 2017 WL 6755113, at *3. The BOP is authorized to rely on the PSR to determine a prisoner's custody level and has no authority to make changes to a PSR, and "a prisoner seeking to challenge any aspect of a pre-sentence report must direct that challenge to either the district court in which he was convicted or the USPO." *Id.*; *but see United States v. Johnson*, No. 11-10204-01-JTM, 2019 WL 2501868, at *1 (D. Kan. June 17, 2019) (finding that the sentencing court lacks authority to issue any binding order upon the BOP with respect to an inmate's placement in a community corrections facility); *see also* 18 U.S.C. § 3621(b) ("Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.").

In a similar case, the court in *Mitchell v. Underwood* summarily dismissed the § 2241 petition, finding that petitioner's claim was not properly raised in a habeas petition, and that the

court need not allow the action to proceed as a civil rights suit because the challenge to his PSR directly implicated his underlying convictions, the validity of which had not been successfully called into question. *Mitchell v. Underwood*, No. 3:19-cv-307-S-BN, 2019 WL 2233280, at *3 (N.D. Tex. Feb. 8, 2019), *rec. adopted* 2019 WL 2225935 (N.D. Tex. May 23, 2019). The court held that where the underlying sentence has not been invalidated, *Heck v. Humphrey*, 512 U.S. 477 (1994) bars civil suits based on allegedly incomplete or improper presentencing reports. *Id.* (citing *Jamison v. Lenawee Cty. Probation Dep't*, No. 2:14-CV-13995, 2014 WL 6810409, at *2 (E.D. Mich. Dec. 2, 2014) ("Plaintiff's complaint challenges his present incarceration. He argues that he was sentenced based upon information improperly included in a presentence investigation report. The complaint necessarily challenges the validity of Plaintiff's sentence . . . . Because Plaintiff has not achieved a favorable termination of his criminal case, this complaint is barred by *Heck*."); *Brady v. Baldwin*, No. 17-cv-1203-NJR, 2018 WL 3496499, at *2 (S.D. Ill. June 20, 2018) ("In this case, Plaintiff argues he was unfairly sentenced based on an incomplete PSI. The PSI was allegedly incomplete because certain officials failed to release Plaintiff's mental health records, and Plaintiff is attempting to bring constitutional claims against those officials. Given this backdrop, a judgment in Plaintiff's favor would necessarily imply the invalidity of his sentence, which has not been invalidated in in a prior proceeding." (collecting cases)); *see also* Fed. R. Civ. P. 32(i)(3) (setting forth the procedure for objecting to a PSR and providing that the sentencing court must rule on objections or determine that a ruling is unnecessary, and "must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the [BOP].").

Although Respondent argues that Petitioner's claims appear most consistent with a claim under the Privacy Act (Doc. 11, at 14), the Court finds that such a claim is not available to

Plaintiff. "The Privacy Act [5 U.S.C. § 552a *et seq.*] 'governs the government's collection and dissemination of information and maintenance of its records [and] generally allows individuals to gain access to government records on them and to request correction of inaccurate records.'" *Kates v. King*, 487 F. App'x 704, 706 (3d Cir. 2012) (quoting *Perry v. Bureau of Prisons*, 371 F.3d 1304, 1304–05 (11th Cir. 2004) (quoting *Gowan v. United States Dep't of the Air Force*, 148 F.3d 1182, 1187 (10th Cir. 1998)). An individual may bring a civil action against the agency when it fails to comply with any provision of the statute. *Id.* (citing 5 U.S.C. § 552a(g)(1).) However,

> [T]he BOP has exempted its central record system, where an inmate's PSI is located, from the Act's relevant enforcement provisions. *See* 28 C.F.R. § 16.97(a); *see also Fendler v. United States Bureau of Prisons*, 846 F.2d 550, 553–54 (9th Cir. 1988). Additionally, United States Probation Offices, because they are units of the federal courts, *see* 18 U.S.C. § 3602, are not subject to the Privacy Act. *See* 5 U.S.C. § 551(1)(B); *Washington Legal Found. v. United States Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C.Cir.1994).

*Kates*, 487 F. App'x at 706.

The court in *Harrison v. Fed. Bureau of Prisons*, found that the petitioner failed to state a Privacy Act claim where petitioner argued that the BOP failed to respond to his requests to review his files; failed to provide him with copies of certain forms in his records; failed to accurately maintain his records by relying on inaccurate and misleading information in his PSR; and failed to comply with its own processes for permitting inmates to review their records. *Harrison v. Fed. Bureau of Prisons*, 248 F. Supp. 3d 172, 180 (D.D.C. 2017). The court stated that:

> Generally speaking, subsection (d)(1) requires each agency to provide individuals with access to records that pertain to them. Individuals denied access may sue for injunctive relief. *Id.* § 552a(g)(1)(B) & (g)(3). Under subsection (e)(5), moreover, if an

> agency uses records to make a determination about an individual, the agency must maintain those records "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." If inaccurate records result in a "determination . . . which is adverse to the individual," the individual may sue. *Id.* § 552a(g)(1)(C). And if the Court finds that the agency acted in an "intentional or willful" manner, damages are available. *Id.* § 552a(g)(4). Finally, subsection (f) requires that agencies promulgate regulations implementing the Act's requirements. Agencies that fail to comply with such regulations "in such a way as to have an adverse effect on an individual" may also be subject to suit, and, if the conduct was "intentional or willful," may be liable for damages. *Id.* § 552a(g)(1)(D) & (g)(4).

*Id.* (citing the Privacy Act of 1974, 5 U.S.C. § 552a). The court held that "[a]lthough these subsections ostensibly provide relief of the kind [petitioner] seeks, because the BOP has exempted the relevant system of files, [petitioner] has failed to state a Privacy Act claim." *Id.* "All information pertaining to a prisoner's security level and custody classification is maintained in the Inmate Central Records System," and "that system of records is exempt from the provisions of the Privacy Act on which [petitioner] relies." *Id.* (citing *Vaden v. U.S. Dep't of Justice*, 79 F. Supp. 3d 207, 212 (D.D.C. 2015) (quotations and alterations omitted); *see* 5 U.S.C. § 552a(j)(2) (authorizing the exemption); *see also* 28 C.F.R. § 16.97(j) (the exemption itself)). Furthermore, although P.S. 5800.17 allows an inmate to review and challenge records in the Inmate Central File System, this does not waive the BOP's Privacy Act exemption. *Id.* at 181 (noting that the relevant portion of the Program Statement says just the opposite—it states that it establishes an administrative procedure for record review *separate* from the Privacy Act and its statutory requirements).

### 4. The BOP's Classification Determinations

To the extent Petitioner is seeking to vacate the BOP's determinations regarding his security classification and PSF, or its transfer and eligibility determinations, the Court lacks

jurisdiction to consider such claims. *Id*. at 182. The court in *Harrison* held that:

> The APA provides for judicial review of certain agency actions, and waives the sovereign immunity of the United States for such claims (and others). *See generally* 5 U.S.C. §§ 702, 706. But, what the APA gives, another provision—18 U.S.C. § 3625—takes away. In that provision, Congress has specified that the APA's provisions waiving sovereign immunity and creating a cause of action "do not apply to the making of any determination, decision, or order under" the statutes that govern the "imprisonment" of those convicted of a crime. *Id*. The referenced statutes governing "imprisonment" include, among other things, rules governing "the place of the prisoner's imprisonment," *id*. § 3621(b), and the consideration of "the history and characteristics of the prisoner" in making that assignment, *id*. § 3621(b)(3). As such, "BOP decisions involving custody classification and place of confinement are expressly exempt by statute from judicial review under the APA." *Miller v. Fed. Bureau of Prisons*, 703 F.Supp.2d 8, 16 (D.D.C. 2010). An inmate's civil action to vacate the BOP's placement of a PSF on his record, and the housing and security determinations that follow from that placement, fall into this category. *See, e.g.*, *Burnam v. Marberry*, 07–cv–97, 2008 WL 4190785, at *7 (W.D. Pa. Sept. 10, 2008) (holding that 18 U.S.C. § 3625 precluded judicial review of BOP's decision to assign the plaintiff a PSF), *aff'd*, 313 Fed.Appx. 455, 456 (3d Cir. 2009). The United States, accordingly, has not waived its sovereign immunity for these claims.

*Id*. at 182–83; *see also Poole v. Lothrop*, No. CV-18-00187-PHX-GMS, 2019 WL 2027939, at *3 (D. Ariz. May 8, 2019) ("The requirements of the Administrative Procedure Act do not apply to decisions made pursuant to 18 U.S.C. §§ 3621(b) or 3624(c)(1)" and to allow petitioner to challenge BOP's discretionary determinations under those statutes would be inconsistent with 18 U.S.C. § 3625).

Furthermore, the law is clear that a prisoner has no constitutional right to be placed in any particular correctional facility, even though the degree of confinement in one facility may be quite different from that in another. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators'

expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("[T]he Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers.") (citation omitted); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate, and classification and eligibility decisions generally involve "no legitimate statutory or constitutional entitlement sufficient to invoke due process").

"The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement." *Parsons v. Howard*, Civil No. 3:18-cv-1406, 2019 WL 469913, at *3 (M.D. Pa. Feb. 6, 2019) (citations omitted); *see also* 28 C.F.R. § 0.96. "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *Id.* (quoting *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987)); *see also Zheng Yi Xiao v. La Tuna Fed. Corr. Inst'n*, EP-19-CV-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. April 3, 2019) (noting that the statutory language in 18 U.S.C. § 4082(b) was re-codified and is currently found at 18 U.S.C. § 3621(b)).

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest'." *Parsons*, 2019 WL 469913, at *3 (citing *Assaad v. Ashcroft*, 378 F.3d 471,

475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999)

(citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *accord Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *see also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege . . ., denial of such relief cannot violate a substantive interest protected by the Due Process clause."); *cf. Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process.'") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)); *see also Carey v. Quintana*, No. 5:19-30-JMH, 2019 WL 1233846, at *2 (E.D. Ky. Mar. 15, 2019) ("'RRC placement and home confinement are helpful resources for readjustment to society, but a prisoner does not have a constitutionally protected right to serve the final twelve months of his sentence in either a RRC or in home confinement.'") (quoting *Heard v. Quintana,* 184 F. Supp. 3d 515, 520 (E.D. Ky. 2016)).

### 5. RRC/CCC Consideration

#### A. Habeas Relief

Respondent argues that Petitioner's claims are not properly brought in a habeas action. However, claims regarding placement in an RRC or CCC have been allowed in § 2241 petitions, although the appropriate relief is an order directing the BOP to undertake the individualized review required by law. *See Sparks v. Chester*, No. 11-3025-RDR, 2013 WL 1896998, at *1 (D. Kan. May 6, 2013) (citing *Wedelstedt v. Wiley*, 477 F.3d 1160, 1168 (10th Cir. 2007) (affirming grant of habeas corpus relief and requiring BOP to consider factors in 18 U.S.C. § 3621(b) to evaluate possible transfer to RRC)); *Turner v. Chester*, No. 10-3260-RDR, 2011 WL 2731760, at *3 (D. Kan. July 13, 2011) (finding that there is authority that in some circumstances, a

prisoner's challenge to the location of confinement may be cognizable in habeas corpus, and citing the significant difference between placement in an RRC and incarceration to conclude that the decision regarding eligibility implicates the execution of a prisoner's sentence) (citations omitted); *see also Bassinger v. Wiley*, No. 09-cv-00005-PAB-KLM, 2010 WL 908923, at *5 (D. Colo. March 9, 2010) (respondent's argument that court lacked jurisdiction because applicant did not challenge the "fact or duration" of his sentence was "not well received" where the issue raised (RRC placement) "has been a frequent subject of litigation in this Circuit via habeas application") (citations omitted).

### B.  Statutory Framework

Two federal statutes, 18 U.S.C. §§ 3621(b) and 3624(c), are relevant to the issues raised. "Section 3621(b) provides that the BOP has the authority to designate where an inmate will be imprisoned and to direct his or her transfer to another facility, including RRCs and CCCs." *Garza v. Davis*, 596 F.3d 1198, 1201 (10th Cir. 2010).  Section 3621(b) provides that:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. The Bureau shall, subject to consideration of the factors described in the preceding sentence and the prisoner's preference for staying at his or her current facility or being transferred, transfer prisoners to facilities that are closer to the prisoner's primary residence even if the prisoner is already in a facility within 500 driving miles of that residence. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

**(1)** the resources of the facility contemplated;
**(2)** the nature and circumstances of the offense;
**(3)** the history and characteristics of the prisoner;
**(4)** any statement by the court that imposed the sentence--

> **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> **(B)** recommending a type of penal or correctional facility as appropriate; and

**(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person. Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.

18 U.S.C. § 3621(b) (as amended by the First Step Act of 2018, P.L. 115-391, December 21, 2018, 132 Stat 5194, at Sec. 601).

Section 3624(c) charges the BOP with preparing prisoners who are approaching the end of their sentences for re-entry into society. Prior to 2008, 18 U.S.C. § 3624(c) limited the time frame during which an inmate was eligible for pre-release custody in an RRC or CCC to the final six months or ten percent of his or her sentence, whichever was less. 18 U.S.C. § 3624(c) (West 2000), *amended by* Second Chance Act of 2007, Pub. L. No. 110–199, § 251, 122 Stat. 657, 692 (2008). This eligibility period was expanded and § 3624(c) now provides in relevant part:

> **(1) In general. --** The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not

to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

. . .

**(4) No limitations.** – Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

18 U.S.C. § 3624(c). Under this statute, the BOP is obligated to consider placing an inmate in an RRC during the final portion of their sentence for up to twelve months, and the determination must be made in a manner consistent with the five factors in § 3621(b). *See* 28 C.F.R. § 570.22 (2008) ("Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time frames set forth in this part.").

Prior to the amendment, the BOP utilized a categorical approach, only designating inmates to RRC facilities during the last ten percent of the sentence being served so long as that sentence did not exceed six months. *Garza*, 596 F.3d at 1202. In *Wedelstedt*, the Tenth Circuit invalidated the BOP's categorical approach, holding that the BOP's "categorical refusal to consider the five statutory factors [set forth by 18 U.S.C. § 3621(b)] is in direct conflict with the clear congressional command that the factors be considered if a transfer is sought or recommended." *Id.* (citing *Wedelstedt v. Wiley*, 477 F.3d 1160, 1167 (10th Cir. 2007)). The Tenth Circuit held that despite § 3624(c)'s apparent direction to the contrary, such direction "has no bearing on whether a CCC may be considered as a place of imprisonment *at some earlier point* in a prisoner's period of incarceration." *Wedelstedt*, 477 F.3d at 1166 (emphasis added). Rather, "Section 3621(b) articulates clear and unambiguous congressional intent that *all*

*placement and transfer determinations* be carried out with reference to each of the five factors enumerated in § 3621(b)(1)– (5)." *Id.* (emphasis added).

After the statute was amended to expand the eligibility period to twelve months, the BOP issued two memoranda to provide guidance to staff in implementing the new amendment:

> The first memorandum, issued on April 14, 2008, addressed the statutory changes . . . emphasizing that the pre-release time frame for RRC and CCC had been increased to twelve months and that there was no percentage limitation on time to be served. Additionally, the memorandum instructed staff that they must make prerelease placement decisions "on an individual basis in every inmate's case" and that "the Bureau's categorical timeframe limitations on pre-release community confinement . . . *are no longer applicable, and must no longer be followed*." . . . Staff were instructed to review inmates for pre-release placements at an earlier time, e.g., seventeen to nineteen months before their projected release dates, and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b). However, the memorandum also stated that "[w]hile the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that "[s]hould staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager."

*Garza*, 596 F.3d at 1202–03 (citations omitted).

The second BOP memorandum, issued on November 14, 2008, addressed requests for transfer to an RRC by an inmate who had more than twelve months remaining on their sentence—a "non-prerelease inmate." The memorandum "instructed staff that they could not automatically deny a non-pre-release inmate's request for pre-release transfer, but must give each request individualized consideration." *Id*. at 1203 (citation omitted) ("In other words, staff *cannot* say that an inmate, whatever the circumstances, is *automatically ineligible* for transfer to a RRC. Rather, staff must first review the inmate's request on its individual merits . . . .").

"However, if an inmate were to request transfer prior to the pre-release time frame of twelve months, although staff must individually consider the request, they were instructed that there was 'no need' to perform immediately the statutorily prescribed individualized review. . . . Rather, the inmate should be informed that the request would be fully reviewed in conjunction with the next scheduled Program Review." *Id*. The memorandum also cautioned staff that they should not inform an inmate that he or she was ineligible for transfer because "[t]elling an inmate that he/she is *ineligible* for RRC placement is the same as *automatically* denying the inmate from even being considered for such placement, and is not in accord with Bureau Policy." *Id*. (citation omitted).

The second memorandum also stated that "[a]n RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs." *Id*. (citation omitted). The Tenth Circuit has held that the BOP memoranda indicate that the BOP recognizes its authority to place inmates in RRCs and/or CCCs for periods exceeding six months, and they do not reflect any policy of categorical denial. *Id*. (citing *Ciocchetti v. Wiley*, No. 09-1336, 2009 WL 4918253, at *3 (10th Cir. Dec. 22, 2009)).

### C. Pre-Release vs. Non-Prerelease

Pre-release placements are addressed in § 3624(c) and are limited to the final twelve months of an inmate's term of imprisonment. Non-prerelease inmates are inmates with more than twelve months remaining on their sentence, and their requests for transfer to an RRC are governed by § 3621(b). The parties disagree, and the record in unclear, as to whether Petitioner only sought pre-release placement in an RRC, or whether he sought a routine transfer as a non-prerelease inmate to an RRC under 18 U.S.C. § 3621(b). Petitioner disputes Respondent's

allegation that "Petitioner has not requested immediate placement in an RRC, but rather, evaluation for pre-release placement in an RRC." (Doc. 11–1, at 3.) Respondent states that Petitioner will be evaluated 17–19 months prior to his release date for pre-release RRC placement, and based on his current custody and security needs it would be inappropriate for him to be housed at an RRC at this time. *Id.* at 3–4. Respondent argues that "Petitioner has not yet been assessed for pre-release RRC placement, and this will not occur until 17–19 months from his release date of which is January 17, 2024." (Doc. 11, at 13.)

Although Petitioner disputes the allegation that he has only sought pre-release consideration, his allegations are confusing as to whether he is arguing for pre-release or non-prerelease consideration. Petitioner suggests that he is entitled to "immediate consideration." (Doc. 12–1, at 2.) On the other hand, Petitioner also stresses that he should be considered for re-entry because he is "at or near 10% service of his sentence." (Doc. 10, at 9); *see also* Doc. 5, at 2 (Petitioner alleges that he is being denied pre-release or home confinement at his 10% date); Doc. 1–1, at 8–9 (January 26, 2018 Request to Staff stating that 10% of his sentence makes him eligible for release in 2020 and he should be deemed eligible for CCC or similar placement at the earliest convenience); Doc. 1–1, at 10 (May 1, 2018 Request to Staff stating his desire to be considered for RRC/CCC placement under § 3624(c) because he is "fastly approaching the 10% of [his] total sentence"). Petitioner seems to be referring to the pre-amendment language found in § 3624(c).[6] *See Sparks v. Chester*, No. 11-3025-RDR, 2013 WL 1896998, at *2 (D. Kan. May 6, 2013) (noting that the first BOP memorandum emphasized that there was no longer a percentage limitation on time to be served under the amended § 3624(c)).

---

[6] The Court notes that § 3624(c)(2) also provides that "[t]he authority under this subsection may be used to place a prisoner in home confinement *for the shorter of* 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c)(2) (emphasis added). This provision is also under the heading of "Prerelease custody" in subsection (c).

Petitioner asserts that at his Program Review on February 7, 2019, he was again informed that he would be considered for RRC/CCC Re-entry placement 17 to 19 months from his release date, and staff declined to consider him for "pre-custody release." (Doc. 10, at 9.) Petitioner claims that the BOP is:

> denying Petitioner consideration in a[n] arbitrary and illegal manner, and staff's retaliatory actions ignoring Congresses statutory mandate governing pre-release, in lieu of Bureau policy, considering false and fabricated information to avoid its obligation to take steps to transition prisoners back into society. Steps in its discretion, which includes a release into a community corrections center, home confinement, as well as other meaningful gestures at pre-release transitioning devised or sponsored by the Bureau of Prisons.

(Doc. 10, at 9.)

### D. Prerelease RRC/CCC Consideration

The Court finds that any claim Petitioner makes regarding his eligibility for pre-release consideration under § 3624(c) is not ripe for adjudication. Petitioner makes no allegation that he is a pre-release inmate, nor could he as his projected release date is January 17, 2024, via Good Conduct Time release. *See Staples v. Chester*, No. 08-3159-RDR, 2009 WL 10694827, at *4 (D. Kan. Sept. 3, 2009) ("The record shows petitioner has been advised he will be considered for such prerelease placement approximately 17 to 19 months before his projected October 2019 release date, and the court finds no ground that would entitle petitioner to that placement at this point in his sentence.").

The court in *Calloway v. Thomas* held that "[b]ecause petitioner is not presently entitled to an RRC assessment under § 3624(c), he has not demonstrated a specific present objective harm or a specific future harm." *Calloway v. Thomas*, No. CV. 08-544-MA, 2009 WL 1925225, at *4 (D. Ore. July 1, 2009). "Indeed, his projected release date is tentative, as some intervening

event may impact when he receives that review." *Id.* (citations omitted). Because the BOP's rules regarding pre-release RRC placement under § 3624(c) had not been applied to the petitioner, his claims were not ripe and the court found that he lacked standing. *Id.* The court found that although resolution of these issues was undoubtedly important to petitioner, the court could discern "no [irremediable] adverse consequences from requiring a later challenge following the BOP's actual application of the policies, especially given that petitioner is not eligible for review pursuant to § 3624(c)" until sometime the next year at the earliest. *Id.* at 5; *see also Curry v. Thomas*, No. 1:CV-14-0756, 2014 WL 4078639, at *3 (M.D. Pa. Aug. 18, 2014) (finding where a final RRC placement decision had not been made, a habeas petition must be dismissed since it is premature and does not present a justiciable case or controversy) (citations omitted).

### E.  Non-prerelease Consideration

Petitioner alleges that the BOP categorically denied him consideration for RRC/CCC placement without consideration of 18 U.S.C. § 3624(c) and § 3621, based on BOP regulations and the fact that Petitioner still had over four years remaining on his sentence. Petitioner had a Unit Team Program review on February 2, 2019, where he requested RRC/CCC placement review and requested that the inaccurate information be corrected in his Central File. His request was denied and he was informed that his next review would take place in August of 2019.

To the extent Petitioner claims he is entitled to an immediate transfer to an RRC, because he is several years away from the completion of his sentence, § 3621(b) would govern the BOP's authority to consider his request. The BOP's *discretion* under § 3621(b) is separate and distinct from the BOP's *obligation* under § 3624(c). The BOP cannot deny a request for consideration for the *sole* reason that an inmate in ineligible for consideration until he is within a 17 to 19-

month window of his release date.  The Tenth Circuit in *Wedelstedt* made it clear that the BOP cannot categorically deny consideration based upon an arbitrary time frame.  *See Bassinger v. Wiley*, No. 09-cv-00005-PAB-KLM, 2010 WL 908923, at *7 (D. Colo. March 9, 2010) (where petitioner was consistently told he would not be considered for placement until he was within 17–19 months of his projected release date, the court stated that the grievance responses "clearly convey that Respondent, and others up the chain of review . . . , failed to grasp the significance of the holding in *Wedelstedt* or the BOP's instructions and instead continued to categorically deny consideration based upon an arbitrary time frame").

Although the BOP has a duty to consider the factors in § 3621(b), nothing in the statutory language suggests that an inmate is entitled to an immediate, individualized evaluation considering the five factors as soon as an inmate makes a transfer request.  *Stokes v. Cross*, No. 13-998-CJP, 2014 WL 503934, at *5 (S.D. Ill. Feb. 7, 2014).  "In fact, some courts have held that the BOP is not required to consider the factors unless and until it decides to transfer an inmate; only then the factors should be considered in selecting the facility."  *Id*. (citing *Muniz v. Sabol*, 517 F.3d 29, 36 n.14 (1st Cir. 2008), *cert. denied*, 555 U.S. 853 (2008) (holding that § 3621(b) factors need not be considered until the BOP has decided to transfer a prisoner because "Congress surely did not intend" that "the BOP would never be free to decline a transfer request without considering the five factors"); *Sanz v. United States*, Case No. 07-61596-CIV, 2008 WL 1820641, at *3 (S.D. Fla. Apr. 23, 2008) ("[W]hile a prisoner is free to apply for a transfer at any time, the BOP is not required to review such an application under § 3621(b)."); *Rodriguez-Calderon v. Lindsay*, Case No. 3:05-CV-2640, 2007 WL 2756878, at *1 (M.D. Pa. Sept. 20, 2007) ("An inmate simply cannot trigger the consideration of prison placement factors by asking for a transfer because an inmate has no right to be housed in any particular prison.")).

Entitling inmates to an "on-demand" individualized assessment of their transfer requests at all times of the inmate's choosing would present an impractical burden on the BOP. *Stokes*, 2014 WL 503934 at *5. As the Eighth Circuit explained:

> [A]n inmate is [not] entitled to a full-blown analysis of a request to transfer, involving individualized consideration of all five factors in § 3621(b), whenever the inmate chooses to make such a request. Taken to its logical conclusion, the argument advanced by the inmates would require the BOP to consider daily requests for transfer to an RRC from every inmate in a facility, and to deny such requests only after an individualized consideration of each inmate's request and the five statutory factors. . . . Congress surely did not intend such a result.

*Id.* (quoting *Miller v. Whitehead*, 527 F.3d 752, 757 (8th Cir. 2008) (citing *Muniz*, 517 F.3d at 36 n.14)); *see also Calloway*, 2009 WL 192522, at *7 ("[P]etitioner's interpretation could potentially create an unworkable situation for the BOP, requiring it to analyze such requests under § 3621(b) at an inmate's whim.").

"The November 14, 2008, guidance memorandum to staff relates to inmate requests for transfers to RRCs when they have *more* than twelve months remaining on their sentences. . . . [and] provides that all requests must receive individualized consideration under § 3621(b) at the inmate's next scheduled Program Review." *Pierce v. Thomas*, No. CV 08-705-MA, 2009 WL 1925469, at *2 (D. Ore. July 1, 2009). Thus, although staff must individually consider the request, "[t]here is no need, however, to immediately perform the individualized review at the moment it is submitted . . . [i]nstead staff should inform the inmate that the request will be evaluated during the next program review." *Stokes*, 2014 WL 503934, at *6 (noting that under 28 C.F.R. § 524.11(a)(2), inmates receive a program review at least once every 180 days).

Although it is unclear whether or not Petitioner sought an immediate transfer to an RRC, he does allege that he did not seek a transfer when he was recently transferred to Forrest City.

Petitioner alleges that he has never been considered under the five factors set forth in § 3621(b) and that the BOP has never explained to him its analysis of the five factors. *See Stokes*, 2014 WL 503934 at *6 (nothing in the language of § 3621 requires BOP to explicitly reference or explain its rationale with respect to each of the five factors) (citing *Miller*, 527 F.3d at 758 ("Although the warden's responses were brief, the statute does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer to an RRC."). Requiring the BOP to analyze each factor in detail to the inmates would "make a mockery of the term 'agency discretion'" and turn the good-faith review requirement into a "mechanical pseudo-process, unduly burden the agency, and invite a flood of meritless litigation" about the BOP's thought process and the relative importance attributed to each factor. *Id.* (citing *Ganim v. Fed. Bureau of Prisons*, Case No. 06-cv-2957, 2006 WL 2847239, at *6 (D. N.J. Sept. 28, 2006).

Because it is not clear from the record that Petitioner has made a request for an immediate transfer to an RRC, the Court will not order the BOP to undertake an individualized consideration at this time. If Petitioner intends to make such a request, he should specify that he is seeking an immediate transfer as opposed to pre-release consideration. If Petitioner makes such a request, he would be entitled to receive individualized consideration under § 3621(b) at his next scheduled Program Review.

**IT IS THEREFORE ORDERED THAT** Petitioner's Motion for Stay Pending Transfer to Another Jurisdiction and on Notice Request to Transfer 28 U.S.C. § 2241 Petition (Doc. 14) and Motion for Evidentiary Hearing and Request for Production of Documents (Doc. 13) are **denied**.

**IT IS FURTHER ORDERED THAT** Petitioner's retaliation claim and any claim he asserts based on his custody classification are not properly before the Court and are therefore **dismissed**.

**IT IS FURTHER ORDERED THAT** Petitioner's request for habeas relief is **denied**.

**IT IS SO ORDERED**.

**Dated in Kansas City, Kansas, on this 19th day of August, 2019.**


<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**